{00070843.DOC.2}

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into between and among Dover Limited, a Hong Kong corporation (hereinafter, "Dover"), on the one hand, and A.B. Watley, Inc., a New York corporation (hereinafter, "Inc."), A.B. Watley Group, Inc., a Delaware corporation (hereinafter, "Group"), and A.B. Watley Direct, Inc., a Delaware corporation (hereinafter, "Direct"), both individually and collectively on the other hand ("Inc.," "Group," and "Direct" hereinafter collectively referred to as the "Watley parties").

### RECITALS

**WHEREAS,** on or about June 20, 2006, Dover filed a Third Amended Complaint against the Watley parties and other parties in an action venued in the United States District Court for the Southern District of New York, Case No. 04 CV 7366, entitled *Dover Limited et al. v. A.B. Watley Group, Inc. et al.* (the "Lawsuit"), seeking to recover monies in connection with alleged losses in Dover's account at Inc., in an amount of not less than \$2,994,597.84, together with interest thereon, and also seeking punitive damages, costs, legal expenses and reasonable attorneys' fees in connection with the Lawsuit; and

**WHEREAS,** the Watley parties filed an Answer denying any liability whatsoever; and

**WHEREAS,** Dover and the Watley parties previously agreed in a Settlement Agreement dated October 8, 2007 (the "Prior Agreement"), to end their litigation and dismiss the Lawsuit, and settle their differences in consideration of the mutual promises contained in the Prior Agreement; and

**WHEREAS,** Dover asserted that Inc. and Group had materially breached the Prior Agreement;

{00074202.DOC.1}

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/21/08

**WHEREAS,** pursuant to a Confession of Judgment given to Dover by Inc. and Group as part of the Prior Agreement, Dover filed such Confession of Judgment and obtained a judgment against Inc. and Group in the Southern District of New York on December 13, 2007 in the amount of $2,994,597.84 (the "Judgment");

**NOW, THEREFORE,** in consideration of the promises and for other good and valuable consideration, the receipt of which is hereby acknowledged, the parties agree as follows:

1)  Recitals:  The foregoing Recitals are true and correct and are hereby made a part of this Agreement.

2)  Payment:  Group and Inc. only shall be jointly and severally responsible for any settlement payment obligations under this Agreement. This term however creates no limitation on Dover's rights concerning the share(s) of Direct that are pledged by Group as security under this Agreement.  Group and Inc. will cause Dover to be paid on or before December 31, 2018, the amount of $2,994,597.84 (the "Settlement Amount"), as follows:

(a)  On or before April 18, 2008, the sum of 30,000.00, either by wire transfer or certified check;

(b)  Beginning in May 2008, to the extent a portion of the Settlement Amount remains unpaid, during calendar years 2008 and 2009, monthly minimum payments of $10,000 will be made, at or before the end of each month.

(c)  During calendar years 2010 and 2011, to the extent a portion of the Settlement Amount remains unpaid, monthly minimum payments of $15,000 will be made, at or before the end of each month.

(d)    During calendar years 2012 through 2018, to the extent a portion of the Settlement Amount remains unpaid, monthly minimum payments of $20,000 will be made, at or before the end of each month.

(f)    Group and/or Inc., as a further means of paying off the Settlement Amount, will also make lump sum payment(s) in the amount of twenty-five per cent (25%) of any outside investment capital raised for Group and/or Inc., such payment(s) to be made within ten (10) business days of the closing(s) on such capital raises. Group and/or Inc. agree that they will not cause Direct to raise capital independent of Group and/or Inc. Any such payments by Group and/or Inc. referenced in this paragraph will reduce Group and Inc.'s total obligation under this Agreement.

(g)    The monthly minimum payments set forth in paragraphs 2(a), (b), (c) and (d) above may, at Group or Inc.'s option, be increased at any time. Group and Inc. further reserve the right at any time to prepay any or all of the outstanding balance of the Settlement Amount due to Dover. Any such payments by Group and/or Inc. referenced in this paragraph will reduce Group and Inc.'s total obligation to Dover under this Agreement.

(h)    If requested by Dover during a period commencing upon the effective date of this Settlement and ending on December 31, 2012, Group shall issue to Dover (or Dover's designees) warrants to purchase up to 500,000 shares of Group's Common Stock ("Warrants"), at a price of one cent ($.01) per warrant. The Warrants shall be exercisable for a period of three (3) years from the date of issuance and be exercisable in whole or in part. The holder of the Warrant shall be entitled to one "piggyback" registration right with respect to the underlying shares of Common Stock in the next registration statement filed by Group with the Securities and Exchange Commission so as to allow for the resale of the underlying shares by the holder in

{00074202.DOC.1}3

accordance with the Securities Act of 1933, as amended; provided, however, that Group shall not be required to include any such shares unless and until Dover has instructed Group to issue the Warrants. Group shall provide twenty (20) days' notice to Dover of Group's intention to file a registration statement so as to provide Dover with time to determine whether to request issuance of the Warrants.

(i)     In addition, Group agrees to offer Dover an equity interest in Group, to expedite the required payoff of the Settlement Amount and to enable Dover an opportunity to earn additional returns as follows: In the event that the reported closing price of the common stock of Group is $1.00 or more per share during any calendar month and during such period there is an average monthly volume of 50,000 shares, Dover shall have the right (but not the obligation) to convert, within five (5) days of the end of each such month, up to $100,000 of the remaining total owed by Group and Inc. into shares of Group at the average closing value of the common stock for such month (each such instance being a "Conversion"). Upon such Conversion, Dover shall also receive common stock purchase warrants ("Conversion Warrants") with an exercise price of $.10 per share in an amount equal to 20% of the shares issued to Dover under the Conversion. (Example: If 100,000 shares of Group were issued upon a Conversion, an additional 20,000 in warrants with an exercise price of $.10 would be granted.) These Conversion Warrants shall have an exercise term of three (3) years from the date of issuance and shall provide for registration of the underlying shares of Common Stock as provided for in the Warrants to be issued under clause (h) above.

(j)     With respect to any of the shares of Common Stock underlying the warrants under clause (h) above or issuable to Plaintiff upon conversion of the outstanding debt as provided in clause (i) above and the Conversion Warrants (all such shares of Common Stock being referred

to as "Registrable Shares"), Group hereby agrees that Dover shall be entitled to the following registration rights:

(i)    Dover shall be entitled to the "piggyback" registration rights described under clause (f) above for all of the Registrable Shares;

(ii)    Provided that the Common Stock of Group has a closing price of $1.00 or more for any thirty (30) consecutive trading days, Group shall file, within ninety (90) days of the end of such thirty (30) day period, a registration statement on appropriate form, with the SEC to allow for Dover to sell the Registrable Shares under the Securities Act of 1933, as amended; and

(iii)    In the event that the Registrable Shares have not been registered for resale on behalf of Dover under clauses (i) or (ii) above by a date which is two years from the date of this Settlement Agreement, Group shall file a registration statement on appropriate form within ten (10) business days of such second anniversary date to allow for the resale of all of the Registrable Shares by Dover.

(k)    To the extent that any funds are recovered by Dover from SIPC or related sources of insurance, Dover agrees that Group and Inc.'s total obligation under this Agreement will be reduced by such amounts. To the extent that Alain Assemi contributes more than Fifty Thousand Dollars ($50,000.00) to the settlement with Dover, Dover agrees that any excess over that amount shall reduce Group and Inc.'s total obligation under this Agreement. Any funds recovered by Group or Inc. from sources as described in this paragraph shall be paid to Dover within ten (10) business days of Group or Inc.'s receipt thereof.

(l)    Any outstanding balance of the Settlement Amount remaining unpaid on December 31, 2018, will be paid to Dover on such date.

3) In order to secure the payment of the Settlement Amount and as a further inducement for Dover to enter into this Agreement, once Group has fulfilled its obligations spelled out in the Agreement by and between Group and AT&T Corp., dated October 4, 2006 (the "AT&T Agreement"), and until such time as the Settlement Amount herein is paid in full and during the term of this Agreement, Dover will succeed to the rights of AT&T under the AT&T Agreement with respect to the shares in Direct. A copy of the AT&T Agreement is annexed to this Agreement as Exhibit A. Until that time, Group agrees that Dover has an interest in the shares of Direct subordinated only to AT&T under the terms of the AT&T Agreement. Group further warrants and represents that it will neither cause nor allow any other interest in the Shares of Direct to take priority over Dover's.

(a) Group represents that the Direct stock is free and clear of all liens and encumbrances, other than that of AT&T, and further covenants that until such time as the Settlement Amount is paid in full, that Group will remain as the sole owner of all of the issued and outstanding shares of stock of Direct, and that it will not cause nor allow Direct to issue any additional shares of stock of whatever class and for whatever reason.

(b) Nothing in "pararagraph 3" herein or in any other provision of this Agreement shall be deemed or construed to create any obligations, duties or liabilities (contingent or otherwise) of or by Direct. The management of Direct, however, agrees that it will cooperate fully with Dover in any request, demand or instruction made of it in the event Dover takes possession of the shares of Direct in the event of default or otherwise.

(c) Group agrees that in the event of default, as defined below, it will cause a Stock Power in the Blumberg form, or as otherwise lawfully required by Dover, to issue in Dover's name and favor, and to accompany the delivery of the Direct share certificates.

4)      The Judgment:

(a) As long as Group and Inc. continue to perform under this Agreement without any defaults Dover shall refrain from taking any steps to enforce or collect upon the Judgment, and shall also refrain from serving any discovery notices, or conducting any discovery, in aid of any such enforcement or collection efforts. If Group and Inc. fully perform under this Agreement, Dover will file a Satisfaction of Judgment within ten (10) business days of the completion of such full performance, and provide a copy of same to Grouip and Inc.

5)      Defaults:   Group and Inc. shall be deemed to be in default of this Agreement only upon the occurrence of one or more of the following conditions:

(a)      Group or Inc. fail to pay any installment of the Settlement Amount specified in paragraph 2 above by the due date, or otherwise fail to comply with paragraph 2 above. Notwithstanding the foregoing and the payment schedule set forth in paragraph 2 above, Group and Inc. will not be deemed in default until they have fallen more than 60 days behind in their payments and have not paid a penalty of 10% per each late month on any payment that is not paid on or before the end of the month in which it is due.

(b)      Group and/or Inc. file or petition for protection under any laws relating to bankruptcy, insolvency, reorganization, or the relief of debtors.

(c)      Group and/or Inc. fail to comply with any of the provisions of paragraph 2 related to issuing stock or warrants to Dover and remain in noncompliance for more than sixty (60) days.

(d) In the event of a default as defined above, Dover agrees not to seek to enforce the judgment against Direct or collect upon the Judgment as against Direct. This provision,

however, is without prejudice to any rights Dover may be granted under this Agreement with respect to the stock of Direct.

(e) The parties to this Agreement stipulate that in the event of a failure by Group or Inc. to cause to be paid an aggregate sum of $1,500,000.00 in accordance with the payment schedule and/or other payment provisions herein, and/or fail to deliver all share certificates (and a Stock Power) of Direct in the event of default, Dover has the right to declare a material breach and revoke this Agreement. However, despite any "material breach" of this Agreement, any amounts paid to Dover pursuant to this Agreement shall be applied to reduce the amount of the original judgment obtained by Dover against Inc. and Group.

6)    No Waiver: No failure or delay on the part of Dover in exercising any right, power or privilege hereunder nor course of dealing between Dover and the Watley parties shall operate as waivers hereof. No single or partial exercise of any right, power or privilege shall preclude any other or further exercise of any right, power or privilege.

7)    Representation by Counsel: Dover and the Watley parties each confirm that they had independent advice of counsel in connection with the negotiation and execution of this Agreement.

8)    Confidentiality: The parties agree that, from the date of this Agreement forward, the terms of this Agreement, the Prior Agreement and the underlying claims out of which this dispute arose, shall be confidential and, neither they nor their agents, successors, assigns, attorneys, employees, executors, administrators and beneficiaries will disclose the terms of this Agreement or the Prior Agreement, or the underlying claims related to the dispute which led to this Agreement or the Prior Agreement, to any person or entity not a party to the action, except to their attorneys and accountants as needed for legal, tax or accounting purposes; as required by

{00074202.DOC.1}8

paragraph 3 of this Agreement, related to the Security Interest; as required by applicable laws; as ordered by a court or an arbitration tribunal of competent jurisdiction; as required by FINRA or other regulatory organization; or pursuant to a duly authorized subpoena. This provision should not be construed to preclude either party from responding to any inquiry, or providing testimony, about the settlement or underlying facts and circumstances by, or before, any law enforcement, regulatory or self-regulatory organization, including, but not limited to the Securities and Exchange Commission or FINRA. Notwithstanding the foregoing, either party may disclose to a third-party, only in response to a direct question about the matters that are the subject of the litigation, that the matter has been resolved to the mutual satisfaction of the parties.

9)    Entire Agreement:    This Agreement and the documents delivered herewith constitute the entire and complete understanding among the parties and supersede any prior oral or written agreements between the parties not expressed herein, including but not limited to the Prior Agreement. It is expressly agreed that there have been no verbal understandings or agreements which would in any way change the terms, covenants and conditions herein set forth and that no modification of this Agreement, and no waiver of their terms and conditions, shall be effective unless it is in writing and duly executed by Dover and the Watley parties.

10)    Governing Law: This Agreement shall be governed by the laws of the State of New York (without regard to the conflict of law rules of the State of New York). If any term in this Agreement shall be held to be illegal or unenforceable, the remaining portions of this Agreement shall not be affected, and this Agreement shall be construed and enforced as if this Agreement did not contain the term held to be illegal or unenforceable. The parties hereby submit to the jurisdiction of the Honorable Denise L. Cote, over any action or proceeding arising

out of or relating to this Agreement, and agree that all claims in respect to such action or proceeding shall be heard and determined in said Court.

11)    Binding Effect, Assignment:  This Agreement shall be binding upon and inure to the benefit of Dover and the Watley parties, and their respective heirs, successors and assigns.

12)    Construction of Agreement:  Neither construction of this Agreement, nor any provision thereof, shall be affected in any manner by the fact that it was drafted by one side or the other.

13)    Wire Transfer Instructions:  Pursuant to paragraph 2 above, unless otherwise instructed by Dover, Group or Inc. will direct any wire transfers constituting payments of the Settlement Amount to:  Capital One Bank, f/k/a North Fork Bank, 1011 Third Ave., NY, NY 10021, ROUTING NO. 021407912; ACCOUNT NO. 9654006247; SWIFT NFBK US 33.; ACCOUNT NAME: Thomas M. Mullaney, Esq.

14)    Notices:  All notices and other communications provided for hereunder shall be in writing (including by facsimile or e-mail), and mailed, faxed or delivered:

a)    If to Plaintiff:

> Wendy Sui Cheng Yap
> as agent for Dover Limited
> 56 Andrew Road
> 299968
> SINGAPORE
> (By DHL or other overnight delivery service only)

with a copy to:

For Plaintiff Dover Limited:
The Law Offices of Thomas M. Mullaney
Thomas M. Mullaney (TM-4274)
708 Third Avenue, Suite 2500
New York, NY 10017
(212) 223-0800 (tel.)

(212) 661-9860 (facsimile)
TMM@Mullaw.org

b)      If to Defendants:

A.B. Watley Group, Inc.
c/o Steven Malin
50 Broad Street, Suite 1728
New York, New York 10004
Facsimile:  (212) 202-5204

with a copy to:

Donald G. Davis, Esq.
Ellenoff Grossman & Schole LLP
150 East 42nd Street
New York, N.Y. 10017
Tel: 212-370-1300
Fax: 212-370-0804
ddavis@egsllp.com

or, as to either party, at such other address as shall be designated by such party in a written notice
to the other party.  All such notices and communications shall, when mailed or faxed, be
effective when deposited in the mails or transmitted by facsimile, respectively, addressed as
provided above.

15)     Mutual Releases:  In consideration of the agreements contained herein, the parties
agree (i) that the prior releases contained in their Prior Agreement (the Settlement Agreement
dated October 8, 2007) are still in full force and effect and are not being revoked, modified or
superseded by this Agreement, and (ii) that the below mutual releases will become effective
upon Group and Inc's satisfaction of judgment in this case, a condition precedent to the
effectiveness of these Mutual Releases:

a)     Release by the Watley parties:     Except for claims arising under this Agreement, which claims are hereby specifically retained, the Watley parties, individually and collectively, for themselves and their officers, directors, employees, agents, attorneys, representatives, subsidiaries, shareholders, predecessors, successors and assigns, hereby release and forever discharge Dover and each of its past, present and future officers, directors, employees, agents, attorneys, representatives, subsidiaries, shareholders, predecessors, successors, and assigns, of and from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, whether known or unknown, liquidated or unliquidated, fixed or contingent, direct or indirect, which the Watley parties ever have, have had or ever can, shall or may have, or claim to have against Dover and any of such past, present and future officers, directors, employees, agents, attorneys, representatives, subsidiaries, shareholders, predecessors, successors, and assigns, upon or by reason of any matter, act or thing from the beginning of the world to the day of the date of this Agreement.

b)     Release by Dover:  Except for claims arising under this Agreement, which claims are hereby specifically retained, Dover, for itself and each of its past, present and future officers, directors, employees, agents, attorneys, representatives, subsidiaries, shareholders, predecessors, successors, and assigns, hereby release and forever discharges the Watley parties and their past, present and future officers, directors, employees, agents, attorneys, representatives, subsidiaries, shareholders, predecessors, successors, and assigns, of and from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances,

trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, whether known or unknown, liquidated or unliquidated, fixed or contingent, direct or indirect, which Dover or any of its past, present and future officers, directors, employees, agents, attorneys, representatives, subsidiaries, shareholders, predecessors, successors, and assigns, ever has, has had or ever can, shall or may have, or claim to have against the Watley parties or their officers, directors, employees, agents, attorneys, representatives, subsidiaries, shareholders, predecessors, successors and assigns, upon or by reason of any matter, act or thing from the beginning of the world to the day of the date of this Agreement.

16)    Counterparts: This Agreement may be signed by Dover and the Watley parties in counterparts, any of which shall be deemed an original, and all of which together shall constitute one and the same instrument, notwithstanding that all of the parties hereto are not a signatory to the original or the same counterpart. Facsimile signatures shall have the same binding force and effect as original signatures. This Agreement shall be deemed binding and in force upon each party hereto receiving from the others an executed counterpart.

17)    Additional Documents: Dover and the Watley parties agree to sign such additional documents, and take all such action consistent with the terms of this Agreement, as are reasonably required to effect the intent and purpose of this Settlement Agreement.

18)    Representation and Warranty: The signatories to this Settlement Agreement represent and warrant that they have the power and authority to sign and enter into this Settlement Agreement, and to bind their principals to the terms of this Settlement Agreement.

So ordered.

Denise Cote

April 21, 2008

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of this ___16th___

day of   April, 2008.


DOVER LIMITED

By: _____
      Wendy Sui Cheng Yap


A.B. WATLEY, INC.

By: _____
      Steven Malin  /as Chairman of ABWatley Group


A.B. WATLEY GROUP, INC.

By: _____
      Steven Malin


A.B. WATLEY DIRECT, INC.

By: _____
      Ralph Armenti


{00074302.DOC.1}14